UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SUNG MO JUN,<br>JUNWOO CHON,<br>JOON JUN, and<br>AYDEN LEE,<br><br>Defendants. | No. CR21-135 RAJ<br><br>INFORMATION<br><br>15 U.S.C. §§78j(b) and 78ff and<br>17 C.F.R. §§240.10b5 and 10b5-1 |

THE UNITED STATES ATTORNEY CHARGES THAT:

## COUNTS 1 – 3
(Securities Fraud - Insider Trading)

Between in or about July 2016 and in or about July 2019, at Issaquah and Bellevue, in the Western District of Washington, and elsewhere, defendants SUNG MO JUN, JUNWOO CHON, JOON JUN, and AYDEN LEE, and others known and unknown, willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 15, United States Code, Section 78j(b) and Title 17, Code of Federal Regulations, Sections 240.10b-5 and 240.10b5-1, by

Information/SUNG MO JUN, et al. - 1

purchasing and selling and causing the purchase and sale of securities on the basis of material non-public information about those securities and their issuer, in breach of a duty of trust and confidence owed directly, indirectly, and derivatively to the issuer of those securities, the shareholders of that issuer, and to any other person who is the source of the material non-public information.

**I.   Background.**

1.   Between July 2016 and July 2019, Netflix, Inc. was a publicly traded company headquartered in Los Gatos, California. Netflix was an issuer with a class of securities registered with the U.S. Securities and Exchange Commission under Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 78l. Netflix's securities were registered with the SEC throughout the relevant period. Netflix's common stock was listed on the NASDAQ Stock Market, a national exchange, under the symbol "NFLX."

2.   Between July 2016 and February 2017, SUNG MO JUN was employed by Netflix as a software engineer. From at least July 2017 through July 2019, AYDEN LEE was employed by Netflix as a software engineer. From at least January 2019 to July 2019, another individual was employed by Netflix as a software engineer ("Tipper 1"). While employed by Netflix, SUNG MO JUN, AYDEN LEE, and Tipper 1 had continuous access to Netflix's subscriber data, including information concerning Netflix's growth in total subscribers. Netflix's internal subscriber information constituted material, non-public information until Netflix publicly released the information as part of its quarterly and annual earnings announcements. During the relevant period, Netflix's subscriber information was a key metric that significantly impacted the price of Netflix's stock.

3.   At the beginning of their employment at Netflix and continuing throughout their employment at Netflix, SUNG MO JUN, AYDEN LEE, and Tipper 1 were informed of, and acknowledged, Netflix's internal insider trading guidelines. Among other things, these guidelines prohibited SUNG MO JUN, AYDEN LEE, and Tipper 1

from: (1) trading in Netflix's securities while in possession of material, non-public information; and (2) passing Netflix's material, non-public information to others.

4.      By virtue of their employment at Netflix, SUNG MO JUN, AYDEN LEE, and Tipper 1 had a duty to keep confidential the material, non-public subscriber information belonging to Netflix. By providing Netflix's material, non-public information to others for the purpose of conducting trading in Netflix securities, SUNG MO JUN, AYDEN LEE, and Tipper 1 breached their duty.

5.      In February 2017, Technology Company 1 was a publicly traded company headquartered in Santa Clara, California. Technology Company 1 was an issuer with a class of securities registered with the U.S. Securities and Exchange Commission under Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 78l. Technology Company 1's securities were registered with the SEC throughout the relevant period. Technology Company 1's common stock was listed on the New York Stock Exchange, a national exchange.

6.      At the time, SUNG MO JUN was a friend of another individual who was employed by Technology Company 1 ("Tipper 2"). Tipper 2 had access to Technology Company 1's material, nonpublic financial information. By virtue of Tipper 2's employment at Technology Company 1, Tipper 2 had a duty to keep confidential the material, non-public information belonging to Technology Company 1. By providing Technology Company 1's material, non-public information to SUNG MO JUN for the purpose of conducting trading in Technology Company 1's securities, Tipper 2 breached Tipper 2's duty.

7.      From December 2017 to February 2018, Technology Company 2 was a publicly traded company headquartered in Seattle, Washington. Technology Company 2 was an issuer with a class of securities registered with the U.S. Securities and Exchange Commission under Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 78l. Technology Company 2's securities were registered with the SEC throughout the relevant

period. Technology Company 2's common stock was listed on the New York Stock Exchange, a national exchange.

8. During this time, JUNWOO CHON and JOON JUN were friends of an individual who was employed at Technology Company 2 ("Tipper 3"). Tipper 3 had access to Technology Company 2's material, nonpublic financial information. By virtue of Tipper 3's employment at Technology Company 2, Tipper 3 had a duty to keep confidential the material, non-public information belonging to Technology Company 2. By providing Technology Company 2's material, non-public information to JUNWOO CHON and others for the purpose of conducting trading in Technology Company 2's securities, Tipper 3 breached Tipper 3's duty.

9. Between in or about July 2016 and August 2019, JUNWOO CHON was a resident of Bellevue, Washington. JUNWOO CHON was friends with SUNG MO JUN and JOON JUN.

10. Between in or about July 2016 and August 2019, JOON JUN was a resident of Issaquah, Washington. JOON JUN is SUNG MO JUN's brother and a friend of JUNWOO CHON.

## II. Summary of the Scheme.

11. Beginning in July 2016, and continuing through July 2019, SUNG MO JUN, JUNWOO CHON, and JOON JUN worked together to engage in insider trading in Netflix securities by, among other things: (1) sharing material, non-public information, namely Netflix's internal subscriber data, that SUNG MO JUN misappropriated from his employment at Netflix, and, later, obtained from AYDEN LEE, another Netflix employee; (2) contacting another Netflix employee, Tipper 1, to obtain information concerning Netflix's operational results; and (3) closely coordinating the securities they traded based upon this material, non-public information.

12. In addition to conducting insider trading in Netflix securities, SUNG MO JUN, JUNWOO CHON, and JOON JUN also engaged in insider trading in the securities of Technology Company 1 prior to Technology Company 1's earnings announcement on

February 13, 2017. JUNWOO CHON and JOON JUN also traded in Technology Company 2's securities on the basis of Technology Company 2's material, non-public information prior to Technology Company 2's earnings announcement on February 1, 2018.

### III. Manner and Means of the Scheme.

13. It was a part of the scheme to defraud that, as Netflix employees, SUNG MO JUN, AYDEN LEE, and Tipper 1 had access to Netflix's material, non-public subscriber information. It was also a part of the scheme to defraud that, by virtue of their employment with Netflix, SUNG MO JUN, AYDEN LEE, and Tipper 1 had a duty to keep confidential this material, non-public information.

14. By virtue of their employment at Netflix, SUNG MO JUN, AYDEN LEE, and Tipper 1 were informed of, and acknowledged, Netflix's internal insider trading guidelines. Among other things, Netflix's guidelines prohibited SUNG MO JUN, AYDEN LEE, and Tipper 1 from: (1) trading in Netflix securities while in possession of material, non-public information; and (2) passing Netflix's material, non-public information to others or recommending that others trade Netflix securities based on material, non-public information.

15. It was also a part of the scheme to defraud that, contrary to these restrictions, SUNG MO JUN, AYDEN LEE, and Tipper 1 passed Netflix's material, non-public information to others for the purpose of trading in the securities of Netflix. Between July 2016 and April 2017, SUNG MO JUN tipped JUNWOO CHON and JOON JUN with Netflix's material, non-public information concerning its internal subscriber number, and JUNWOO CHON and JOON JUN made trades in advance of each earnings announcement based on this information.

16. For example, on January 17, 2017, using the material, non-public information SUNG MO JUN provided them in breach of SUNG MO JUN's duty to Netflix, JUNWOO CHON and JOON JUN each purchased 100 Netflix call options with a strike price of $130 which expired on January 27, 2017. After the market closed on

January 18, 2017, Netflix announced its financial results for the fourth quarter ending December 21, 2017, and Netflix's subscriber number beat analyst expectations. Between January 19 and 23, 2017, JUNWOO CHON and JOON JUN sold the call options they purchased on January 17, 2017 and realized significant profits.

17. Between July 2016 and April 2017, JUNWOO CHON made a net profit of $521,400 and JOON JUN made a net profit of $215,419 (totaling $736,819) trading Netflix securities based on the material, non-public information SUNG MO JUN gave them during this period.

18. It was also part of the scheme to defraud that SUNG MO JUN requested, and received, cash payments totaling $60,000 from JUNWOO CHON as SUNG MO JUN's portion of the profits from JUNWOO CHON's trading in Netflix securities based upon the material, non-public information SUNG MO JUN obtained from Netflix and fraudulently passed to JUNWOO CHON.

19. Between July 2017 and July 2019, AYDEN LEE, at SUNG MO JUN's request, tipped SUNG MO JUN with Netflix's material, non-public information concerning its internal subscriber numbers. SUNG MO JUN made trades in advance of each earnings announcement during this period based on this information. For example, on January 22, 2018, SUNG MO JUN purchased 100 Netflix call options with a strike price of $205 expiring January 26, 2018. Netflix announced its earnings and subscriber growth after the market closed on January 22, 2018. On January 23 and 24, 2018, SUNG MO JUN sold the 100 call options he had purchased on January 22, 2018, and made approximately $256,814 in profits.

20. In addition, SUNG MO JUN passed the material, non-public information AYDEN LEE provided him to JUNWOO CHON and JOON JUN, and they also conducted trades based on this material, non-public information.

21. Between July 2017 and July 2019, SUNG MO JUN's prohibited trades in Netflix stock and options resulted in a total net profit of $434,086. Thus, together with the profits of JUNWOO CHON and JOON JUN between July 2016 and April 2017, the

illicit gains attributable to SUNG MO JUN concerning insider trading in Netflix securities is $1,170,906.

22. It was also part of the scheme to defraud that between January 2019 and July 2019, SUNG MO JUN, JUNWOO CHON, and JOON JUN also contacted Tipper 1 seeking additional information concerning Netflix's results. In response to these requests, Tipper 1 provided general information on whether Netflix's quarterly results would be neutral, positive, or negative. SUNG MO JUN, JUNWOO CHON, and JOON JUN conducted trades in Netflix securities based in part on this material, non-public information.

23. Between July 2016 and July 2019, JUNWOO CHON's prohibited trades in Netflix stock and options resulted in a total net profit of $1,640,641.

24. Between July 2016 and July 2019, JOON JUN's prohibited trades in Netflix stock and options resulted in a total net profit of $1,101,629.47

25. It was also a part of the scheme to defraud that, by relying on the material, non-public information provided by SUNG MO JUN, AYDEN LEE, and Tipper 1 as set forth above, SUNG MO JUN, JUNWOO CHON, JOON JUN, and AYDEN LEE defrauded Netflix of its material, non-public financial information for the purpose of converting it to the use of SUNG MO JUN, JUNWOO CHON, and JOON JUN, and for the purpose of executing securities transactions in the stock and options of Netflix. These acts also constituted a scheme to defraud the counterparties in these illicit trades.

26. In addition to conducting insider trading in Netflix securities as set forth above, SUNG MO JUN, JUNWOO CHON, and JOON JUN also engaged, on one occasion, in insider trading in the securities of Technology Company 1 based upon material, non-public information provided to SUNG MO JUN by Tipper 2. JUNWOO CHON and JOON JUN also engaged in insider trading, on one occasion, in the securities of Technology Company 2 based upon material, non-public information provided by Tipper 3.

## IV. Execution of the Scheme.

27. On or about the dates set forth below, in Bellevue and Issaquah, within the Western District of Washington, and elsewhere, having devised and participated in the above described scheme and artifice, SUNG MO JUN, JUNWOO CHON, JOON JUN, and AYDEN LEE, engaged in the following conduct:

| Count | Defendant(s) Charged | Date | Conduct |
|---|---|---|---|
| 1 | SUNG MO JUN JUNWOO CHON | January 17, 2017 | Purchase of 100 Netflix call options by JUNWOO CHON |
| 2 | JOON JUN | January 17, 2017 | Purchase of 100 Netflix call options |
| 3 | AYDEN LEE | January 22, 2018 | Purchase of 100 Netflix call options by SUNG MO JUN |

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.10b5 and 10b5-1.

## ASSET FORFEITURE ALLEGATION

The allegations in Counts 1 through 3 are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. Upon conviction of the offense alleged in Count 1, the defendants SUNG MO JUN, JUNWOO CHON, JOON JUN, and AYDEN LEE shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), by way of Title 28, United States Code, Section 2461(c), any property that constitutes or is traceable to proceeds of the offense. This property includes but is not limited to a sum of money reflecting the proceeds the defendant obtained from the offense.

**Substitute Assets.** If any of the property described above, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or,
   e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of any other property of the defendant, up to the value of the above-described forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

DATED: August 17, 2021

*signature*
TESSA M. GORMAN
Acting United States Attorney

*signature*
ANDREW C. FRIEDMAN
Assistant United States Attorney

*signature*
JUSTIN W. ARNOLD
Assistant United States Attorney

Information/SUNG MO JUN, et al. - 9

UNITED STATES ATTORNEY
700 STEWART STREET
SEATTLE, WASHINGTON 98101
(206) 553-7970